# Exhibit A

# Commonwealth of Massachusetts

SUFFOLK, ss.



SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 15-0879-BLS2

UniFirst Corporation
_____ , Plaintiff(s)

v.

Insurance Company of North America, Indemnity
Insurance Company of North America, CIGNA Property &
Casualty Insurance Company n/k/a ACE Property & Defendant(s)
Casualty Insurance Company, and Pacific Employers
Insurance Company

## SUMMONS

To the above-named Defendant: Indemnity Insurance Company of North America
c/o Mr. John J. Lupica, President
436 Walnut St., Philadelphia, PA 19106

You are hereby summoned and required to serve upon Robert J. Gilbert, Esq. of Gilbert & Renton LLC

plaintiff's attorney, whose address is 344 N. Main St., Andover, MA 01810 , an answer to
the complaint which is herewith served upon you, within 20 days after service of this summons upon you,
exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint. You are also required to file your answer to the complaint in the office
of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable
time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which
you may have against the plaintiff which arises out of the transaction or occurrence that is the subject
matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, **Judith Fabricant** ~~Barbara J. Rouse~~, Esquire, at Boston, the _____ 10th _____ day of
_____ April _____ , in the year of our Lord two thousand Fifteen _____ .

*Michael Joseph Donovan*

Clerk/Magistrate

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant,
   each should be addressed to the particular defendant.
3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
   (1) TORT — (2) MOTOR VEHICLE TORT — ③ CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV.P. 1 3rd Rev. 20M-10/11

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

| CIVIL ACTION COVER SHEET | TRIAL COURT OF MASSACHUSETTS SUPERIOR COURT DEPARTMENT COUNTY: **SUFFOLK** | DOCKET NO. **15-0879** |
|---|---|---|

| TYPE PLAINTIFF(S) NAME | **UniFirst Corporation** | TYPE DEFENDANT(S) NAME | **Insurance Co. of N. America, Indemnity Ins. Co. of N. America, CIGNA n/k/a ACE Property & Casualty Ins. Co. & PEIC** |
|---|---|---|---|

| Type Plaintiff's Attorney name, Address, City/State/Zip Phone Number and BBO# | Type Defendant's Attorney Name, Address, City/State/Zip Phone Number (If Known) |
|---|---|
| Robert J. Gilbert, Esq. (BBO#565466), Jeffrey B. Renton, Esq. (BBO#554032), Fannie I. Minot, Esq. (BBO#600776) Gilbert & Renton LLC 344 N. Main St., Andover, MA 01810 (978) 475-75802 | Not Known |

**TYPE OF ACTION AND TRACK DESIGNATION** (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| **A99 Other (specify ) - Fast Track** | | | [xx] Yes    [ ] No |

RECEIVED

MAR 27 2015

CLERK / MAGISTRATE

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

| | | | |
|---|---|---|---|
| A. | Documented medical expenses to date: | | |
| | 1. Total hospital expenses | | $ |
| | 2. Total doctor expenses | | $ |
| | 3. Total chiropractic expenses | | $ |
| | 4. Total physical therapy expenses | | $ |
| | 5. Total other expenses (describe) | | $ |
| B. | Documented lost wages and compensation to date | Subtotal | $ |
| C. | Documented property damages to date | | $ |
| D. | Reasonably anticipated future medical expenses | | $ |
| E. | Reasonably anticipated lost wages and compensation to date | | |
| F. | Other documented items of damages (describe) | | $ |
| G. | Brief description of plaintiff's injury, including nature and extent of injury (describe) | | |
| | | Total $ | |

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s): UniFirst has incurred defense, cleanup, and settlement costs in connection with a site in Somerville. Defendants have wrongly failed to defend or indemnify these costs under auto liability policies providing long-tail coverage for vehicle-related releases causing property damage during the policy period.

Over

**TOTAL**   $.5,000,000

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

None

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____   Date:   March 26, 2015

A.O.S.C. 3-2007

| CIVIL ACTION COVER SHEET | DOCKET NO(S) **B.L.S.** **15-0879** | Trial Court Of Massachusetts Superior Court Department County: **SUFFOLK** |
|---|---|---|

| PLAINTIFF(S) UniFirst Corporation | DEFENDANT(S) Insurance Co. of North America, Indemnity Insurance Co. of North America, CIGNA n/k/a ACE Property & Casualty Insurance Co., and Pacific Employers Insurance Company |
|---|---|

**ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE** Board of Bar Overseers number
Robert J. Gilbert, Esq. (BBO#565466), Jeffrey B. Renton, Esq. (BBO#554032),
Fannie I. Minot, Esq. (BBO#600776)
Gilbert & Renton LLC, 344 N. Main, Andover, MA 01810     (978) 475-7580

ATTORNEY (if known)

**RECEIVED**

Not Known

MAR 27 2015

SUPERIOR COURT - CIVIL
MICHAEL JOSEPH DONOVAN

Origin Code Original Complaint

A99 Insurance Contract

TYPE OF ACTION AND TRACK DESIGNATION (See reverse side) CODE NO. TYPE OF ACTION (specify) TRACK IS THIS A JURY CASE?     YES

BK.1 _____ (B) (✓Yes () No

BK.1 Insurance

The following is a full and detailed statement of the facts on which plaintiff relies to determine eligibility in to The Business Litigation Session.

This action involves insurance coverage for environmental liabilities asserted against UniFirst by Massachusetts DEP and private parties at a site in Somerville. The BLS handled prior litigation involving this site. See UniFirst v. Liberty Mutual, Civ. No. 08-4300-BLS1. Several factors make this case appropriate for the Business Litigation Session, including the following:

1. This case falls within at least two categories that presumptively qualify for handling in the BLS, including e.1 ("claims involving breaches of contract, ... business torts or other violations involving business relationships") and k.1 ("other commercial claims, including insurance, ... involving complex issues"); and

2. The insurance coverage sought in this case is complex both chronologically, as it involves policies dating back to the 1990s, and substantively, as the Court is likely to encounter novel legal issues addressing the applicability of occurrence-basis auto liability policies to long-tail pollution claims.

Because of the variety, numerosity and complexity of the insurance policies at issue in this case, as well as the novelty of many of the issues that may arise with respect to, inter alia, coverage for long-tail environmental claims under the commercial auto policies issued by Defendants, this case is appropriate for adjudication in the Business Litigation Session. Venue is appropriate as UniFirst maintains a business location in Suffolk County.

\* A Special Tracking Order shall be created by the Presiding Justice of the Business Litigation Session at the Rule 16 Conference.

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT.

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods." Signature of Attorney of Record _____

DATE: **3/27/15**

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.

SUPERIOR COURT DEPT
OF THE TRIAL COURT

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

UNIFIRST CORPORATION,　　　　　　*

　　Plaintiff,　　　　　　　　　*

v.　　　　　　　　　　　　　*

INSURANCE COMPANY OF　　　*
NORTH AMERICA, INDEMNITY　*
INSURANCE COMPANY OF NORTH　*
AMERICA, CIGNA PROPERTY &　*
CASUALTY INSURANCE COMPANY n/k/a　*
ACE PROPERTY AND CASUALTY　*
INSURANCE COMPANY, and PACIFIC　*
EMPLOYERS INSURANCE COMPANY,　*

　　Defendants.　　　　　　　*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

15-0879

15-0879

CIVIL ACTION NO. _____

**RECEIVED**

MAR 27 2015

SUPERIOR COURT - CIVIL
MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE

## COMPLAINT FOR DECLARATORY RELIEF
## AND DAMAGES; DEMAND FOR JURY TRIAL

### INTRODUCTION

1.　　Plaintiff UniFirst Corporation ("UniFirst") brings this action for a declaration of

rights and award of damages relating to the failure of Defendants Insurance Company of North

America ("INA"), Indemnity Insurance Company of North America ("Indemnity Insurance"),

CIGNA Property & Casualty Insurance Company n/k/a ACE Property and Casualty Insurance

Company ("ACE Property and Casualty"), and Pacific Employers Insurance Company ("Pacific

Employers") (collectively, the "ACE Companies") to provide insurance coverage under

numerous business automobile policies for environmental liabilities faced by UniFirst.

2.     UniFirst's claim arises from alleged and actual groundwater and soil contamination at and near a former dry cleaning supply and chemical distribution business on Tufts Street in Somerville, Middlesex County, Massachusetts (the "Property"). This facility was operated by a former subsidiary of UniFirst, Superior Products & Equipment, Inc. ("Superior").

**PARTIES**

3.     Plaintiff UniFirst is a corporation organized under the laws of the Commonwealth of Massachusetts and maintains regular places of business in Boston, Suffolk County, Massachusetts and in Wilmington, Middlesex County, Massachusetts.

4.     Defendant INA is a corporation organized under the laws of the Commonwealth of Pennsylvania, with a principal place of business at 436 Walnut Street, Philadelphia, PA 19106.

5.     Defendant Indemnity Insurance is a corporation organized under the laws of the Commonwealth of Pennsylvania, with a principal place of business at 436 Walnut Street, Philadelphia, PA 19106

6.     Defendant ACE Property and Casualty is a corporation organized under the laws of the Commonwealth of Pennsylvania, with a principal place of business at 436 Walnut Street, Philadelphia, PA 19106.

7.     Defendant Pacific Employers is a corporation organized under the laws of the Commonwealth of Pennsylvania, with a principal place of business at 436 Walnut Street, Philadelphia, PA 19106.

2

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over the parties and claims in this declaratory

judgment action including under Mass. Gen. L. c. 223A, § 3 and c. 231A, § 1, because each of

the Defendants transacts business and/or insures risks in the Commonwealth of Massachusetts

(including the Policies at issue in this case) and provided insurance coverage or claims handling

services specifically applicable to a loss occurring in Massachusetts.

9.    This Court is the appropriate venue for this declaratory judgment action pursuant

to Mass. Gen. L. c. 223, § 8, because UniFirst has a usual place of business in Middlesex

County.

## FACTS

### The ACE Policies

10.    For the period October 1, 1989 to October 1, 1995, INA issued a series of

business automobile policies (the "INA Policies") to UniFirst.

11.    For the period October 1, 1995 to October 1, 1996, Indemnity issued a business

automobile policy (the "Indemnity Insurance Policy") to UniFirst.

12.    For the period October 1, 1996 to October 1, 1998, ACE Property and Casualty

(at the time doing business under the name CIGNA Property & Casualty Insurance Company)

issued two business automobile policies (the "ACE Property and Casualty Policies") to UniFirst.

13.    For the period October 1, 1998 to October 1, 2003, Pacific Employers issued a

series of business automobile policies (the "Pacific Employers Policies") to UniFirst.  The INA

Policies, the Indemnity Insurance Business Policy, the ACE Property & Casualty Policies, and

the Pacific Employers Policies will be referred to herein collectively as the "ACE Policies."

14.     UniFirst has paid all premiums due under all of the ACE Policies.

15.     The ACE Policies were in full force and effect during their entire respective policy periods.

16.     The ACE Policies provide coverage for damages "caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'"

17.     A "covered 'auto'" is defined broadly mean to "Any Auto."

18.     The ACE Policies define the term "accident" to "include[] continuous or repeated exposure to the same conditions resulting in . . . 'property damage'".

19.     Each ACE Policy is triggered by property damage occurring during that policy's period of coverage.

20.     The ACE Policies contain certain limitations or exclusions concerning coverage for pollution.  However, none of these limitations or exclusions bar coverage for pollution altogether.  Indeed, the ACE Policies in effect as of October 1, 1992 explicitly cover "pollution cost or expense."  All of the liabilities and/or cleanup costs at issue in this case are "pollution costs or expenses" or otherwise covered pollution-related liabilities or costs.

21.     The property damage liability limits of each ACE Policy are not exhausted.

22.     The ACE Policies in effect from, at least, October 1, 1995 to October 1, 2003, obligate the issuing ACE Company to share in the cost of UniFirst's defense of underlying claims to the extent the "amount of the judgment or settlement exceeds the amount of the Deductible Per Accident."

4

### The Underlying Claims

23.     During the 1970s and 1980s, Superior operated a dry cleaning supply and chemical distribution business on the Property, located at 50 Tufts Street, Somerville, Massachusetts.

24.     Perchloroethylene (also known as perc or PCE) and Neu-Tri, the brand name for a degreasing solvent containing trichloroethylene (TCE), were two of the industrial chemical products delivered to, stored at and delivered from the Property during Superior's operations.

25.     UniFirst received a Notice of Responsibility from the Massachusetts Department of Environmental Protection ("DEP"), dated November 9, 2005 (the "November 9, 2005 NOR"), asserting UniFirst's obligation to undertake certain investigatory and other response actions in connection with the Property pursuant to Mass. Gen. L. c. 21E ("Chapter 21E"). The November 9, 2005 NOR is attached hereto as Exh. A.

26.     UniFirst received a second Notice of Responsibility from the DEP concerning the Property, dated January 27, 2009 (the "January 27, 2009 NOR"), asserting UniFirst's obligation to undertake certain additional investigatory and other response actions in connection with the Property pursuant to Chapter 21E.   The January 27, 2009 NOR is attached hereto as Exh. B.

27.     On or about July 25, 2008, and January 28, 2009, respectively, UniFirst tendered the November 9, 2005 NOR and January 27, 2009 NOR to the ACE Companies and requested that the ACE Companies agree to defend and indemnify UniFirst.

28.     UniFirst has received other demands relating to the environmental conditions at the Property, including a lawsuit captioned Somerville Two, LLC v. Unifirst Corp. [sic], Civ.

5

No. 08-3075 (Mass. Super. Ct., Middlesex Cty.) (the "Somerville Two Action"). See Exh. C (the "Somerville Two Complaint"). The Somerville Two Action was commenced by the then current owner of the Property, pursuant to Chapter 21E and 42 U.S.C. §9607(a) (CERCLA), seeking, among other things, monetary damages and/or response costs.

29.     The Somerville Two Complaint alleged, upon information and belief, that Superior operated a dry cleaning supply and chemical supply distribution business at the Property from 1976 through 1985. See Exh. C at ¶ 3. The Somerville Two Complaint further alleged, upon information and belief, that these supplies "were delivered to the Property in bulk by rail and by truck and were repackaged for distribution elsewhere." Id. at ¶ 6.

30.     The Somerville Two Complaint further alleged, upon information and belief, that an undefined quantity of dry cleaning and laundry supplies escaped into the environment in various ways, including as a result of a "large leak of chemicals from a truck offloading at the Property in 1980." Id. at ¶ 9.

31.     On or about July 25, 2008, UniFirst notified the ACE Companies of the claims involved in the Somerville Two Action and requested that they agree to defend and indemnify UniFirst.

32.     UniFirst defended against the allegations of the Somerville Two Complaint up until March 9, 2009, at which time the parties settled the case.

33.     UniFirst kept the Defendants apprised throughout the settlement negotiations in the Somerville Two Action, and provided the ACE Companies with an opportunity to participate. On or about March 13, 2009, UniFirst notified the Defendants of the settlement of the Somerville Two Action.

34.    Pursuant to the settlement agreement with Somerville Two, UniFirst agreed to reacquire the Property and pay Somerville Two a sum certain above and beyond the purchase price and/or market value of the Property.

35.    UniFirst also has forwarded to the ACE Companies other claims and demands concerning the Property, including claims from the Massachusetts Bay Transportation Authority ("MBTA") alleging that UniFirst is liable for damage to drainage systems and soil and groundwater on MBTA property as a result of contamination allegedly migrating from the Property. UniFirst has demanded that the ACE Companies defend and indemnify against these other claims and demands.

36.    All of the claims received by UniFirst, including without limitation the NORs from the Commonwealth of Massachusetts, the Somerville Two Complaint, private party claims and claims by the MBTA, shall be referred to hereafter as the "Underlying Claims."

### Defendants' Denial of Coverage

37.    By letter dated March 30, 2009, on behalf of the ACE Companies, Resolute denied coverage for, and advised that the ACE Companies would neither defend nor indemnify UniFirst against the November 9, 2005 NOR, the January 27, 2009 NOR, and/or the Somerville Two Complaint. See Exh. D.

38.    Prior to the Defendants issuing their coverage position letter, on or about February 6, 2009, UniFirst had provided the Defendants copies of all of the ACE Policies.

39.    Prior to the Defendants issuing their coverage position letter, on or about February 6, 2009, UniFirst had also provided Defendants with detailed information and numerous documents concerning the circumstances surrounding the Underlying Claims.

7

40.     The pleadings and additional information made available to the Defendants as of early February 2009 (two months prior to their March 2009 denial letter) contain explicit references to accidental releases of PCE (a chemical involved in each of the Underlying Claims) in connection with the ownership, maintenance or use of motor vehicles and created the potential of coverage under one or more of the ACE Policies.

41.     Notwithstanding this information demonstrating the potential for coverage, the ACE Companies, on March 29, 2009, denied coverage and refused to participate in the defense of UniFirst against the various Underlying Claims.

### Settlement with Liberty Mutual

42.     UniFirst also tendered the Underlying Claims to Liberty Mutual Insurance Company ("Liberty Mutual") for defense and indemnity under various general, automobile and umbrella/excess liability policies Liberty Mutual issued to UniFirst and in effect for a period that included, but is not necessarily limited to, January 1, 1976, to October 1, 1989 (the "Liberty Mutual Policies").

43.     UniFirst and Liberty Mutual have resolved any and all disputes they have, and entered into a confidential settlement agreement, concerning UniFirst's demand for defense and indemnity for the Underlying Claims under the Liberty Mutual Policies.

44.     Pursuant to the settlement agreement and a certain agreement referenced therein, Liberty Mutual has paid UniFirst a sum certain for a portion of the defense costs and indemnity costs UniFirst has incurred in defending and resolving (at least in part) the Underlying Claims.

45.     As part of the settlement agreement, Liberty Mutual assigned to UniFirst any and all claims that Liberty Mutual may have for subrogation, indemnity or contribution against any

third party (other than a reinsurer of Liberty Mutual) concerning the amounts Liberty Mutual has paid to UniFirst pursuant to the settlement agreement or any agreement referenced therein.

### Consequence of Defendants' Denial of Coverage

46. The amount of unpaid defense costs and damages is growing monthly.

47. The ACE Policies obligate the ACE Companies to indemnify UniFirst with respect to the Underlying Claims, up to the ACE Policies' respective limits of liability.

48. The costs or expenses UniFirst has incurred to date in responding to the Underlying Claims have exhausted the applicable deductible(s) in one or more of the ACE Policies, to the extent any such deductible(s) are even applicable at this time.

49. UniFirst has complied with all terms and conditions of the ACE Policies.

50. To the extent UniFirst has not complied with any of the terms or conditions of any of the ACE Policies, none of the ACE Companies has suffered prejudice from such lack of compliance.

51. The defense and indemnity costs and damages incurred by UniFirst have been reasonable.

52. The allegations of the Underlying Claims against UniFirst state or reasonably sketch out claims that potentially or actually fall within the coverage of the ACE Policies.

53. UniFirst has been damaged by the ACE Companies' unjustified refusal to participate in the defense of, and indemnify UniFirst against, Underlying Claims.

9

## COUNT I
### (Declaratory Relief – Duty to Pay Defend and/or Pay Defense Costs)

54.     UniFirst herein repeats the allegations set forth above.

55.     Each of the ACE Companies had and (to the extent they have not been resolved) continues to have a duty to participate in the defense of the Underlying Claims.

56.     Each of the ACE Companies contends differently.  An actual controversy exists among the parties.

57.     A declaration of the parties' respective rights and obligations under the ACE Policies is necessary and appropriate with respect to each of the ACE Companies' obligation to participate in the defense of each of the unresolved Underlying Claims.

58.     WHEREFORE, UniFirst requests separate declarations that each of the ACE Companies is required to participate in the defense of each Underlying Claim, according to the terms of each particular ACE Policy.

## COUNT II
### (Declaratory Relief -- Duty to Indemnify)

59.     UniFirst herein repeats the allegations set forth above.

60.     Each of the ACE Companies has a duty to indemnify UniFirst against the Underlying Claims.

61.     Each of the ACE Companies contends differently.  Therefore, an actual controversy exists between the parties.

62.     A declaration of the parties' respective rights and duties under the ACE Policies is necessary and appropriate with respect to each of the ACE Companies' duty to indemnify UniFirst against Underlying Claims.

63.    WHEREFORE, UniFirst requests separate declarations that each of the ACE Companies is required to participate in the indemnification of each Underlying Claim, according to the terms of each particular ACE Policy.

### COUNT III
### (Breach of Contract -- Failure to Defend and/or Pay Defense Costs)

64.    UniFirst herein repeats the allegations set forth above.

65.    By failing to participate in the defense of the Underlying Claims as required under the ACE Policies, each of the ACE Companies has breached its contracts of insurance.

66.    As a result of this breach, UniFirst has incurred, and will continue to incur, substantial damages.

67.    WHEREFORE, UniFirst requests judgment for its damages incurred in connection with the failure by each of the ACE Companies to participate in the defense of the Underlying Claims as required under the ACE Policies, including defense costs, damages (including without limitation cleanup costs, settlement costs and other damages, even if all such damages exceed the ACE Companies' policy limits), interest, attorney's fees and costs in bringing this action, and all other forms of damages.

### COUNT IV
### (Breach of Contract -- Failure to Indemnify)

68.    UniFirst herein repeats the allegations set forth above.

69.    By failing to participate in the indemnification of damages incurred by UniFirst in connection with the Underlying Claims as required under the ACE Policies, each of the ACE Companies has breached its contracts of insurance

11

70.    As a result of this breach, UniFirst has incurred (and will continue to incur) substantial damages.

71.    WHEREFORE, UniFirst requests judgment for damages incurred by UniFirst in connection with failure by each of the ACE Companies to indemnify UniFirst, including without limitation cleanup costs, settlement costs and other damages (even if all such damages exceed the ACE Companies' policy limits), interest, attorney's fees and costs incurred in bringing this action, and all other forms of damages.

### COUNT V
### (Contribution and/or Indemnity)

72.    UniFirst herein repeats the allegations set forth above.

73.    The ACE Policies were in effect during the time period immediately following the time period during which the Liberty Mutual Policies were in effect.

74.    The property damage resulting from the accidental auto-related releases at issue in this case occurred continuously beginning in or around the mid-to-late 1970s or early 1980s, during certain of the Liberty Mutual policy periods, and continuing into the policy periods of some or all of the ACE Policies.

75.    Having reimbursed UniFirst for a portion of the defense and indemnity costs UniFirst has incurred in defending and resolving (in part) the Underlying Claims, under some or all of the Liberty Mutual Policies, Liberty Mutual has a direct claim against each of the ACE Companies for their fair share of the amounts already paid by Liberty Mutual to UniFirst in defense and indemnity costs.

76. Pursuant to the confidential settlement agreement between UniFirst and Liberty Mutual, see ¶¶ 42-45, *supra*, UniFirst, as Liberty Mutual's assignee, has the right to assert such claims for contribution and/or indemnity against each of the ACE Companies.

77. WHEREFORE, in its capacity as assignee, UniFirst hereby seeks contribution and/or indemnity from each of the ACE Companies for their respective pro rata share of the defense costs and indemnity costs Liberty Mutual has paid UniFirst in connection with the Underlying Claims.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff UniFirst respectfully requests that this Court:

(A) Enter one or more declarations against Defendants Insurance Company of North America, Indemnity Insurance Company of North America, ACE Property and Casualty Insurance Company, and Pacific Employers Insurance Company, and in favor of Plaintiff UniFirst Corporation, establishing each of these insurance companies' respective obligations under the pertinent ACE Policies to participate in the defense of and to indemnify UniFirst with respect to the Underlying Claims;

(B) Enter one or more judgments against Defendants Insurance Company of North America, Indemnity Insurance Company of North America, ACE Property and Casualty Insurance Company, and Pacific Employers Insurance Company, and in favor of Plaintiff UniFirst Corporation, in an amount sufficient to cover all outstanding sums past due, now due and to come due under the pertinent ACE Policies, respectively, with respect to each of these companies' obligations to pay defense and indemnity costs incurred by UniFirst in connection with the Underlying Claims and awarding UniFirst its damages of every kind, its reasonable

13

attorney's fees and costs, as well as pre-suit, prejudgment and post-judgment interest arising from the date of the wrongful conduct of these entities;

(C)     Enter one or more judgments against Defendants Insurance Company of North America, Indemnity Insurance Company of North America, ACE Property and Casualty Insurance Company, and Pacific Employers Insurance Company, and in favor of Plaintiff UniFirst Corporation, as assignee of Liberty Mutual, establishing each of these companies' respective obligations in contribution and/or indemnity under the pertinent ACE Policies for their appropriate share of the defense and indemnity costs paid by Liberty Mutual to UniFirst in connection with the Underlying Claims; and

(F)     Award UniFirst such other and additional relief (legal, equitable or otherwise) as this Court deems just and proper.

## JURY DEMAND

Plaintiff UniFirst Corporation demands a jury trial on all issues and counts so triable.

PLAINTIFF UNIFIRST CORPORATION,
By its attorneys,

Robert J. Gilbert (BBO No. 565466)
Jeffrey B. Renton (BBO No. 554032)
Fannie I. Minot (BBO No. 600776)
GILBERT & RENTON LLC
344 North Main Street
Andover, MA 01810
Telephone: (978) 475-7580
Telecopy: (978) 475-1881

Dated: March 27, 2015

14



COMMONWEALTH OF MASSACHUSETTS
EXECUTIVE OFFICE OF ENVIRONMENTAL AFFAIRS
DEPARTMENT OF ENVIRONMENTAL PROTECTION
METROPOLITAN BOSTON – NORTHEAST REGIONAL OFFICE

MITT ROMNEY
Governor

KERRY HEALEY
Lieutenant Governor

STEPHEN R. PRITCHARD
Secretary

ROBERT W. GOLLEDGE, Jr.
Commissioner

By Certified Mail # 7003 3110 0001 6107 9566

November 9, 2005

Unifirst Corporation
68 Jonspin Road
Wilmington, MA 01887

RE:    Somerville
        50 Tufts Street
RTNs: 3-24376 , 3-23246, 3-24358

NOTICE OF RESPONSIBILITY;
NOTICE OF NEED TO CONDUCT IRA;
DESIGNATION OF INTERIM DEADLINES
M.G.L. c. 21E & 310 CMR 40.0000

Attention: Ronald D. Croatti, President

Dear Mr. Croatti:

On October 3, 2003 Massachusetts Department of Environmental Protection (MassDEP) received notification that a release of oil and/or hazardous material occurred at the subject site which required the initiation of one or more Immediate Response Actions as described in Section 310 CMR 40.0410 of the Massachusetts Contingency Plan (MCP). MassDEP has also determined that Unifirst Corporation is a Potentially Responsible Party (PRP) pursuant to Massachusetts General Law, Chapter 21E (M.G.L. c. 21E), and the MCP. Attached to this letter is a fact sheet discussing the liability provisions of M.G.L. c. 21E, please refer to the statute for a complete discussion of these provisions.

MassDEP encourages parties with liabilities under M.G.L. c. 21E to take prompt action in response to releases and threats of release of oil and/or hazardous material. By taking prompt action, you may significantly lower your assessment and cleanup costs and avoid the imposition of, or reduce the amount of, certain permit and annual compliance fees for response actions payable under 310 CMR 4.00.  Please refer to M.G.L. c. 21E for a complete description of potential liability.

This information is available in alternate format. Call Donald M. Gomes, ADA Coordinator, at 1-617-556-1057. TDD Service - 1-808-298-2207.

One Winter Street, Boston, MA 02108 Phone (617) 654-6500 • Fax (617) 292-5530 TDD # (800) 298-2207

DEP on the World Wide Web: http://www.state.ma.us/dep
Printed on Recycled Paper

## STATUTORY LIABILITIES

Section 5 makes the following parties liable to the Commonwealth of Massachusetts: current owners or operators of a site from or at which there is or has been a release/threat of release of oil or hazardous material; any person who owned or operated a site at the time hazardous material was stored or disposed of; any person who arranged for the transport, disposal, storage or treatment of hazardous material to or at a site; any person who transported hazardous material to a transport, disposal, storage or treatment site from which there is or has been a release/threat of release of such material; and any person who otherwise caused or is legally responsible for a release/threat of release of oil or hazardous material at a site.

This liability is "strict", meaning it is not based on fault, but solely on your status as an owner, operator, generator, transporter or disposer. It is also joint and several, meaning that you may be liable for all response action costs incurred at the site, regardless of the existence of any other liable parties.

The MCP requires responsible parties to take necessary response actions at properties where there is or has been a release or threat of release of oil and/or hazardous material. If you do not take the necessary response actions, or fail to perform them in an appropriate and timely manner, MassDEP is authorized by M.G.L. c. 21E to have the work performed by its contractors. By taking such actions, you can avoid liability for response action costs incurred by MassDEP and its contractors in performing these actions, and any sanctions which may be imposed for failure to perform response actions under the MCP.

You may be liable for up to three (3) times all response action costs incurred by MassDEP. Response action costs include, without limitation, the cost of direct hours spent by MassDEP employees arranging for response actions or overseeing work performed by persons other than MassDEP or their contractors, expenses incurred by MassDEP in support of those direct hours, and payments to MassDEP's contractors. (For more detail on cost liability, see 310 CMR 40.1200.)

MassDEP may also assess interest on costs incurred at the rate of twelve percent (12%), compounded annually. To secure payment of this debt, the Commonwealth may place liens on all of your property in the Commonwealth. To recover the debt, the Commonwealth may foreclose on these liens or the Attorney General may bring legal action against you.

In addition to your liability for up to three (3) times all response action costs incurred by MassDEP, you may also be liable to the Commonwealth for damages to natural resources caused by the release. Civil and criminal liability may also be imposed under M.G.L. c. 21E, § 11, and civil administrative penalties may be imposed under M.G.L. c. 21A, § 16 for each violation of M.G.L. c. 21E, the MCP, or any order, permit or approval issued thereunder.

## BACKGROUND

The above-referenced disposal site was originally reported on October 3, 2003 pursuant to 310 CMR 40.0315, due to the discovery of chlorinated volatile organic compounds (CVOCs) in soil and groundwater. MassDEP assigned the Release Tracking Number (RTN) 3-23246 at that time.

An indoor air sample was collected from the office portion of the building located at 50 Tufts Street on September 21, 2004, and an Imminent Hazard Evaluation was conducted using the analytical results. The indoor air level was determined to potentially pose an Imminent Hazard to the commercial workers in the building at the time. The information was provided to MassDEP as a 2-hour notification on October 22, 2004, and was assigned RTN 3-24358.

On October 29, 2004, MassDEP received documents which indicated additional environmental assessment had been conducted to further delineate the disposal site. This included the installation of 6 additional groundwater monitoring wells along Tufts Street. Testing of the groundwater in these wells showed concentrations of Volatile Organic Compounds in excess of 5 milligrams per liter in groundwater less than 15 feet below ground surface and within 30 feet of occupied residential structures. RTN 3-24376 was assigned to the release condition. Due to these results, MassDEP conducted indoor air testing in seven (7) potentially affected homes on Tufts Street. Results indicated that two (2) homes were impacted by the release, and MassDEP determined that remedial activities needed to be conducted.

MassDEP determined that a Condition of Substantial Release Migration, as described in 310 CMR 40.0006, exists at the site and required the initiation of an Immediate Response Action. Pursuant to 310 CMR 40.0412(3), Immediate Response Actions (IRA) shall be conducted at sites where a Condition of Substantial Release Migration has been identified. Such response actions are required to prevent or mitigate Critical Exposure Pathways, as stated in 310 CMR 40.0414(3) and 40.0414(4).

## NECESSARY RESPONSE ACTIONS

MassDEP has determined that a possible Imminent Hazard exists at the 50 Tufts Street site as described in 310 CMR 40.0321(2). Pursuant to 310 CMR 40.0412(1), an Immediate Response Action shall be conducted at sites where a release or threat of release of any oil and/or hazardous material has occurred, in any quantity or concentration that poses or could pose an Imminent Hazard.

MassDEP has also determined that a Condition of Substantial Release Migration (SRM) and a Critical Exposure Pathway (CEP), both described in 310 CMR 40.0006, exist at the subject site. Pursuant to 310 CMR 40.0412(3), Immediate Response Actions shall be conducted at sites where a condition of Substantial Release Migration has been identified. 310 CMR 40.0414(3) states that "Immediate Response Actions shall be presumed to require the elimination and/or mitigation of Critical Exposure Pathways...". Currently Somerville Two, LLC (a fiduciary currently controlling the property, see section entitled "Identification of Other Potentially Responsible Parties" below) has been conducting response actions to address the SRM.

You, as a Potentially Responsible Party for this release, may undertake the necessary Immediate Response Actions at this site in lieu of MassDEP provided that you submit to this Office, within sixty (60) days from the date of this letter, an Immediate Response Action (IRA) Plan prepared in accordance with 310 CMR 40.0424. An IRA Plan for each release must be submitted to MassDEP. The IRA Plans may be combined into one if desired. At a minimum, the Immediate Response Action Plan(s) must outline the following:

- The opinion of a Licensed Site Professional stating whether or not an Imminent Hazard actually exists at this site, or if such an opinion cannot be rendered, a description of the assessment activities that have been taken and are planned to be taken to determine if an Imminent Hazard exists at this site.
- A monitoring plan for the properties located at 17 and 19 Tufts Street, in which remedial work has been conducted. At a minimum quarterly indoor air testing must be done.
- A monitoring plan for the properties located at 9, 11/13, 23, 25 and 27 Tufts Street to ensure additional residences are not affected by site conditions.
- An evaluation of the potential for impact to additional receptors.
- A description of any other steps you plan to take to address these IRA conditions.

The services of a Licensed Site Professional must be engaged to conduct these activities within the following specified time periods:

1. Within two weeks of the date of your receipt of this letter, an Imminent Hazard Evaluation must be initiated to determine if an Imminent Hazard actually exists at the subject site. In accordance with 310 CMR 40.0426(3), an LSP opinion on whether an Imminent Hazard exists at the site must be submitted to MassDEP within sixty (60) days of the date of this letter.

2. Within sixty (60) days from the date of this letter an Immediate Response Action Plan(s), prepared in accordance with 310 CMR 40.0410, must be submitted to MassDEP.

3. Within one (1) year of the date of this letter, a Response Action Outcome Statement or Tier Classification and Phase I Report must be submitted to MassDEP in accordance with 310 CMR 40.0404(3)(d).

Please note that the deadlines established for response actions and for the submission of the Immediate Response Action Plan(s) are being established as Interim Deadlines pursuant to 310 CMR 40.0167. If you fail to voluntarily undertake the response action(s) necessary at the subject site within the Interim Deadline established herein, MassDEP may perform such response actions and seek to recover MassDEP's costs and/or may initiate other appropriate enforcement actions to ensure that such response actions are conducted. MassDEP's decision to establish one or more Interim Deadlines in accordance with 310 CMR 40.0167 is not subject to M.G.L. c. 30A or any other law governing adjudicatory proceedings.

## IDENTIFICATION OF OTHER POTENTIALLY RESPONSIBLE PARTIES

MassDEP has identified one Other Party associated with this site. As mentioned above, M.G.L. c. 21E liability is "strict", meaning it is not based on fault, but solely on a person's status as an owner, operator, generator, transporter or disposer. It is also joint and several, meaning that a person may be liable for all response action costs incurred at the site, regardless of the existence of any other liable parties. The following party has undertaken response actions as a fiduciary:

> Somerville Two, LLC
> c/o Lawson & Weitzen, LLP
> 88 Black Falcon Avenue
> Suite 345
> Boston, MA 02210-2424
> ATTN: Clare B. Burhoe, Esq.

MassDEP encourages all parties listed here to contact one another in order to respond to this notification. A joint response would be acceptable to MassDEP. MassDEP encourages PRPs to take prompt action in response to releases and threats of release of oil and/or hazardous material. By taking prompt action, PRPs may significantly lower their assessment and cleanup costs and avoid the imposition of, or reduce the amount of, certain permit and annual compliance fees for response actions payable under 310 CMR 4.00.

## GENERAL RESPONSE ACTION REQUIREMENTS

The subject site shall not be deemed to have had all the necessary and required response actions taken unless and until all substantial hazards presented by the site have been eliminated and a level of No Significant Risk exists or has been achieved in compliance with M.G.L. c. 21E and the MCP. In addition, the MCP requires persons undertaking response actions at disposal sites to perform Immediate Response Actions (IRAs) in response to "sudden releases", Imminent Hazards and Substantial Release Migration. Such persons must continue to evaluate the need for IRAs and notify MassDEP immediately if such a need exists.

You must employ or engage a Licensed Site Professional (LSP) to manage, supervise or actually perform the necessary response actions at the subject site. In addition, the MCP requires persons undertaking response actions at a disposal site to submit to MassDEP a Response Action Outcome Statement (RAO) prepared by an LSP in accordance with 310 CMR 40.1000 upon determining that a level of No Significant Risk already exists or has been achieved at a disposal site or portion thereof. (You may obtain a list of the names and addresses of these licensed professionals from the Board of Registration of Hazardous Waste Site Cleanup Professionals at (617) 556-1091 or on the worldwide web at http://mass.gov/lsp/lsphome.html.)

**You should notify MassDEP in writing no later than 5:00 p.m. on November 22, 2005 if you intend to conduct the necessary activities and submit the required documents to MassDEP.**

If you intend to undertake the necessary Immediate Response Actions at this site, you must notify Irene Dale of MassDEP's Northeast Regional Office (978)694-3397 of such an intent by no later than 5:00 p.m. on **November 22, 2005**. If you fail to provide this notice and to voluntarily undertake the response action(s) necessary at the subject site within the time periods established

Somerville, 50 Tufts Street
RTNs 3-23246, 3-24358, 3-24376

Notice of Responsibility
Page 6 of 7

herein, MassDEP may perform such response actions and seek to recover its costs and/or may initiate other appropriate enforcement actions to ensure that such response actions are conducted.

If you have any questions concerning the content of this letter, please contact Irene Dale at the letterhead address or at (617)654-6554 through November 11, 2005. Effective November 14, 2005 please contact Irene Dale at 205B Lowell Street, Wilmington, MA, 01887 or at (978)694-3397. All future communications regarding this release must reference the Release Tracking Number provided in the subject heading of this letter.

Very truly yours,

Irene Dale
Environmental Engineer

Iris W. Davis
Section Chief
Compliance/Risk Reduction Branch

cc:   Clare B. Burhoe, Cburhoe@Lawson-Weitzen.com
Vithal Deshpande, Environmental Coordinator, vdeshpande@ci.somerville.ma.us
Mayor Joseph Curtatone, Somerville City Hall, 93 Highland Ave, Somerville, MA 02143
Ms. Noreen Burke, Somerville Board of Health, nburke@ci.somerville.ma.us
DEP data entry/file (NOR/ISSUED), (C&E/INTLET)

Somerville, 50 Tufts Street
RTNs 3-23246, 3-24358, 3-24376

## ATTACHMENT #1

### STATUTORY LIABILITY PROVISIONS OF M.G.L. c. 21E

The following is provided to advise you of the liability provisions of M.G.L. c. 21E for assessing and remediating releases of oil and/or hazardous materials to the environment. You are advised to review the following section and determine if you are a Responsible Party for the subject release. If, after reading this section, you do not know if you are a Responsible Party, you are advised to seek legal counsel to help you in making this determination.

Section 5 makes the following parties liable to the Commonwealth of Massachusetts: current owners or operators of a site from or at which there is or has been a release/threat of release of oil or hazardous material; any person who owned or operated a site at the time hazardous material was stored or disposed of; any person who arranged for the transport, disposal, storage or treatment of hazardous material to or at a site; any person who transported hazardous material to a transport, disposal, storage or treatment site from which there is or has been a release/threat of release of such material; and any person who otherwise caused or is legally responsible for a release/threat of release of oil or hazardous material at a site.

This liability is "strict", meaning it is not based on fault, but solely on one's status as an owner, operator, generator, transporter or disposer. It is also joint and several, meaning that Responsible Parties may be liable for all response action costs incurred at the site, regardless of the existence of any other liable parties.

The 1993 MCP requires Responsible Parties to take necessary response actions at properties where there is or has been a release or threat of release of oil and/or hazardous material. If Responsible Parties do not take the necessary response actions, or fail to perform them in an appropriate and timely manner, MassDEP is authorized by M.G.L. c. 21E to have the work performed by its contractors.

Responsible Parties may be liable for up to three (3) times all response action costs incurred by MassDEP. Response action costs include, without limitation, the cost of direct hours spent by MassDEP employees arranging for response actions or overseeing work performed by persons other than MassDEP or their contractors, expenses incurred by MassDEP in support of those direct hours, and payments to MassDEP's contractors. (For more detail on cost liability, see 310 CMR 40.1200.)

MassDEP may also assess interest on costs incurred at the rate of twelve percent (12%), compounded annually. To secure payment of this debt, the Commonwealth may place liens on all property owned by a Responsible Party in the Commonwealth. To recover the debt, the Commonwealth may foreclose on these liens or the Attorney General may bring legal action against a Responsible Party.

In addition to liability for up to three (3) times all response action costs incurred by MassDEP, Responsible Parties may also be liable to the Commonwealth for damages to natural resources caused by the release. Civil and criminal liability may also be imposed under M.G.L. c. 21E, § 11, and civil administrative penalties may be imposed under M.G.L. c. 21A, § 16 for each violation of M.G.L. c. 21E, the MCP, or any order, permit or approval issued thereunder.



The Commonwealth of Massachusetts
Department of Environmental Protection
Northeast Regional Office
One Winter Street
Boston, Massachusetts 02108

7003 3110 0001 6107 4566

Mr. Ronald D. Croatti
Unifirst Corporation
68 Jonspin Road
Wilmington, MA 01887

Name
1st Notice
2nd Notice
Return

02 1A
0004351484        $03.95°
                   NOV 09  2005
MAILED FROM ZIP CODE 02108

**NDER:** *COMPLETE THIS SECTION*

Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
Print your name and address on the reverse
so that we can return the card to you.
Attach this card to the back of the mailpiece,
or on the front if space permits.

Article Addressed to:

Ace Long-Term Exposure Unit
c/o Mr. Joseph Mannion
or other Responsible claim Mgr.
436 Walnut St.
Philadelphia, Pa. 19106-3703

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X _____  ☐ Agent
                        ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
                                8/6/08

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)            ☐ Yes

Article Number       7007 1490 0002 5345 3590
Transfer from service

Form 3811, Febr

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

102595-02-M-1540



COMMONWEALTH OF MASSACHUSETTS
EXECUTIVE OFFICE OF ENERGY & ENVIRONMENTAL AFFAIRS
DEPARTMENT OF ENVIRONMENTAL PROTECTION
NORTHEAST REGIONAL OFFICE
205B Lowell Street, Wilmington, MA  01887 • (978) 694-3200

DEVAL L. PATRICK
Governor

TIMOTHY P. MURRAY
Lieutenant Governor

IAN A. BOWLES
Secretary

LAURIE BURT
Commissioner

January 27, 2009

Unifirst Corporation
68 Jonspin Road
Wilmington, MA  01887

**RE:  Somerville**
50 Tufts Street
**RTN 3-28231**

Attention:  Brian Keegan

## NOTICE OF RESPONSIBILITY
## MGL c. 21E & 310 CMR 40.0000

### URGENT LEGAL MATTER: PROMPT ACTION NECESSARY

Dear Mr. Keegan:

On December 19, 2008 at 3:57 pm, the Massachusetts Department of Environmental Protection (MassDEP) received oral notification of a Condition of Substantial Release Migration (SRM) of chlorinated solvents into the Millers River from an existing disposal site, Release Tracking Number 3-23246. Tetrachloroethylene (PCE) was detected in the storm drainage catch basin located at the intersection of Tufts Street and Washington Street in Somerville. Additional investigation indicated that the property located at 50 Tufts Street is the likely source of this contamination.

Based on this information, MassDEP has reason to believe that the property at 50 Tufts Street in Somerville, or portion(s) thereof, is a disposal site as defined in the Massachusetts Oil and Hazardous Material Release Prevention and Response Act, M.G.L. c. 21E and the Massachusetts Contingency Plan (MCP), 310 CMR 40.0000.  M.G.L. c.21E and the MCP govern the assessment and cleanup of disposal sites.

The purpose of this notice is to inform you of your legal responsibilities under state law for assessing and/or remediating the subject release. For purposes of this notice, the terms and phrases used herein shall have the meaning ascribed to them by the MCP unless the text clearly indicates otherwise.

50 Tufts Street                                        RTN 3-28231
Notice of Responsibility                               Page 2

## STATUTORY LIABILITIES

MassDEP has reason to believe that you (as used in this letter "you" refers to **Unifirst Corporation**) are a Potentially Responsible Party (PRP) with liability under M.G.L. c. 21E, Section 5, for response action costs. Section 5 makes the following parties liable to the Commonwealth of Massachusetts: current owners or operators of a site from or at which there is or has been a release/threat of release of oil or hazardous material; any person who owned or operated a site at the time hazardous material was stored or disposed of; any person who arranged for the transport, disposal, storage or treatment of hazardous material to or at a site; any person who transported hazardous material to a transport, disposal, storage or treatment site from which there is or has been a release/threat of release of such material; and any person who otherwise caused or is legally responsible for a release/threat of release of oil or hazardous material at a site.

This liability is "strict" meaning that it is not based on fault but solely on your status as owner, operator, generator, transporter or disposer. It is also "joint and several", meaning that you may be liable for all response action costs incurred at the site, regardless of the existence of any other liable parties.

The MCP requires responsible parties to take necessary response actions at properties where there is or has been a release or threat of release of oil and/or hazardous material. If you do not take the necessary response actions, or fail to perform them in an appropriate and timely manner, MassDEP is authorized by M.G.L. c. 21E to have the work performed by its contractors. By taking such actions, you can avoid liability for response action costs incurred by MassDEP and its contractors in performing these actions, and any sanctions, which may be imposed, for failure to perform response actions under the MCP.

You may be liable for up to three (3) times all response action costs incurred by MassDEP. Response action costs include, without limitation, the cost of direct hours spent by MassDEP employees arranging for response actions or overseeing work performed by persons other than MassDEP or its contractors, expenses incurred by MassDEP in support of those direct hours, and payments to MassDEP's contractors. (For more detail on cost liability, see 310 CMR 40.1200.)

MassDEP may also assess interest on costs incurred at the rate of twelve percent (12%), compounded annually. To secure payment of this debt, the Commonwealth may place liens on all of your property in the Commonwealth. To recover the debt, the Commonwealth may foreclose on these liens or the Attorney General may bring legal action against you.

You may also be liable to the Commonwealth for damages to natural resources caused by the release. Civil and criminal liability may also be imposed under M.G.L. c. 21E, § 11, and civil administrative penalties may be imposed under M.G.L. c. 21A, § 16 for each violation of M.G.L. c. 21E, the MCP, or any order, permit or approval issued hereunder.

**50 Tufts Street**
**Notice of Responsibility**

RTN 3-28231
Page 3

## NECESSARY RESPONSE ACTIONS

The subject site shall not be deemed to have all the necessary and required response actions taken unless and until all substantial hazards presented by the site have been eliminated and a level of No Significant Risk exists or has been achieved in compliance with M.G.L. c. 21E and the MCP. In addition, the MCP requires persons undertaking response actions at disposal sites to perform Immediate Response Actions (IRAs) in response to "sudden releases", Imminent Hazards and Substantial Release Migrations. Such persons must continue to evaluate the need for IRAs and notify MassDEP immediately if such a need exists.

**MassDEP has determined that an IRA is necessary to respond to a release of oil and/or hazardous material at the subject site.** PCE was found at 3,680 µg/L in the catch basin located at the intersection of Tufts Street and Washington Street. Modeling conducted by Ileen Gladstone, LSP-of-record for the 50 Tufts Street site, indicates this level of PCE could be detected in the Millers River. This would constitute a Condition of Substantial Release Migration per 310 CMR 40.0006.

**You are authorized to conduct only the specific response actions for which you received oral approval from MassDEP at the time oral notification was provided to MassDEP of the subject release. All additional Immediate Response Actions require MassDEP approval in accordance with 310 CMR 40.0420.**

**MassDEP reminds you that IRAs must include site assessment activities necessary to evaluate potential Imminent Hazard (IH), Substantial Release Migration (SRM), and Critical Exposure Pathway (CEP) conditions. Additional Immediate Response Actions will be required in the event an IH, SRM, or CEP condition is observed.**

You must employ or engage a Licensed Site Professional (LSP) to manage, supervise or actually perform the necessary response actions at the subject site. In addition, the MCP requires persons undertaking response actions at a disposal site to submit to MassDEP a Response Action Outcome Statement (RAO) prepared by an LSP in accordance with 310 CMR 40.1000 upon determining that a level of No Significant Risk already exists or has been achieved at a disposal site or portion thereof. [You may obtain a list of the names and addresses of these licensed professionals from the Board of Registration of Hazardous Waste Site Cleanup Professionals at (617) 556-1091.]

There are several other submittals required by the MCP which are related to release notification and/or response actions that may be conducted at the subject site in addition to an RAO, that, unless otherwise specified by MassDEP, must be provided to MassDEP within specific regulatory timeframes. The submittals are as follows:

(1)     If information is obtained after making an oral or written notification to indicate that the release or threat of release didn't occur, failed to meet the reporting criteria at 310 CMR 40.0311 through 40.0315, or is exempt from notification pursuant to 310 CMR 40.0317, a Notification Retraction may be submitted within 60 days of initial notification pursuant to 310 CMR 40.0335; otherwise,

(2) If one has not been submitted, a Release Notification Form (RNF) must be submitted to MassDEP pursuant to section 310 CMR 40.0333 within 60 calendar days of the initial date of oral notification to MassDEP of a release pursuant to 310 CMR 40.0300 or from the date MassDEP issues a Notice of Responsibility (NOR), whichever occurs earlier;

(3) Unless an RAO or Downgradient Property Status Submittal is provided to MassDEP earlier, an Immediate Response Action (IRA) Plan prepared in accordance with 310 CMR 40.0420, or an IRA Completion Statement (310 CMR 40.0427) must be submitted to MassDEP within 60 calendar days of the initial date of oral notification to MassDEP of a release pursuant to 310 CMR 40.0300 or from the date MassDEP issues an NOR, whichever occurs earlier; and

(4) Unless an RAO or Downgradient Property Status Submittal is provided to MassDEP earlier, a completed Tier Classification Submittal pursuant to 310 CMR 40.0510, and, if appropriate, a completed Tier I Permit Application pursuant to 310 CMR 40.0700, must be submitted to MassDEP within one year of the initial date of oral notification to MassDEP of a release pursuant to 310 CMR 40.0300 or from the date MassDEP issues an NOR, whichever occurs earlier.

(5) Pursuant to the MassDEP's "Timely Action Schedule and Fee Provisions", 310 CMR 4.00, a fee of $1,200 must be included with an RAO statement that is submitted to MassDEP more than 120 calendar days after the initial date of oral notification to MassDEP of a release pursuant to 310 CMR 40.0300 or after the date MassDEP issues an NOR, whichever occurs earlier, and before Tier Classification. A fee is not required for an RAO submitted to MassDEP within 120 days of the date of oral notification to MassDEP, or from the date MassDEP issues an NOR, whichever date occurs earlier, or after Tier Classification.

It is important to note that you must dispose of any Remediation Waste generated at the subject location in accordance with 310 CMR 40.0030 including, without limitation, contaminated soil and/or debris. Any Bill of Lading accompanying such waste must bear the seal and signature of an LSP or, if the response action is performed under the direct supervision of MassDEP, the signature of an authorized representative of MassDEP.

MassDEP encourages parties with liabilities under M.G.L. c. 21E to take prompt action in response to releases and threats of release of oil and/or hazardous material. By taking prompt action, you may significantly lower your assessment and cleanup costs and avoid the imposition of, or reduce the amount of, certain permit and annual compliance fees for response actions payable under 310 CMR 4.00.

**50 Tufts Street**                                                                                             **RTN 3-28231**
**Notice of Responsibility**                                                                              **Page 5**

If you have any questions relative to this notice, contact Irene Dale at the letterhead address or (978) 694-3397. All future communications regarding this release must reference Release Tracking Number (RTN) 3-28231.

Sincerely,

This final document copy is being provided to you electronically by the Department of Environmental Protection. A signed copy of the original document is on file with the DEP.

John F. Miano, Jr.
Chief, Site Management Section
Bureau of Waste Site Cleanup

Cc:    MassDEP data entry/file (NOR / Issued)
cce:   Board of Health, City of Somerville, nburke@ci.somerville.ma.us
       Ileen Gladstone, LSP, GEI Consultants, igladstone@geiconsultants.com
       David Lutes, Environmental Program Manager, dlutes@ci.somerville.ma.us

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.

08-3075

|  |  |
|---|---|
| Somerville Two, LLC, <br> Plaintiff <br><br> v. <br><br> Unifirst Corporation, <br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT

### Parties

1. Plaintiff Somerville Two, LLC ("ST") is a limited liability company duly organized under the laws of Massachusetts with a business address of 33 Broad Street, Commonwealth Avenue, Suite 345, Boston, MA 02210.

2. Defendant Unifirst Corporation ("Unifirst") is a corporation duly organized under the laws of Massachusetts with a business address of 68 Jonspin Road, Wilmington, Massachusetts.

### Factual Background

3. Upon information and belief, Superior Products & Equipment Co., Inc. ("Superior") owned and operated a dry cleaning and laundry chemical supply company at 50 Tufts Street, Somerville, Massachusetts (the "Property") from 1976 through 1985.

4. Superior purchased the Property in the fall of 1976.

5. Upon information and belief, from 1976 to 2002, Superior was a subsidiary of Unifirst and was managed and controlled by Unifirst management.

1

6. Upon information and belief, Superior's operations included bulk storage and distribution of tetrachloroethene ("PCE") and other chlorinated solvents, which were delivered to the Property in bulk by rail and by truck and repackaged for distribution elsewhere.

7. Upon information and belief, during Superior's operation at the Property, chemicals offloaded from trains at the west of the Property were routinely allowed to drain directly onto the ground.

8. Upon information and belief, during Superior's operation at the Property, chemicals routinely dripped from piping onto the ground at the north of the Property.

9. Upon information and belief, there was a large leak of chemicals from a truck offloading at the Property in 1980.

10. Upon information and belief, during Superior's operation at the Property, Superior's rank and file employees were given no training regarding the dangers of PCE, and PCE spills were so frequent that the employees' work boots would fall apart within weeks. In addition, the PCE would eat the rubber off the tires on the forklifts.

11. Upon information and belief, Superior ceased its operations at the Property in September 1985, at which time the John Danais Co. ("Danais") leased the Property from Superior.

12. Danais leased the Property from Superior for approximately twenty months until May 1987.

13. Upon information and belief, in the course of Danais' operations at the Property, Danais accepted containerized chemical shipments from trucks in the southern portion of

)                                          )

the Property, but did not utilize the rail tracks or unloading area at the north of the Property.

14. On May 21, 1987, Superior sold the Property to 50 Tufts Street, Inc. ("50TSI"), an entity formed by John Danais to take title to the Property. Superior financed over eighty percent of the purchase price. On information and belief, Superior financed the purchase price to avoid the Property being tested for the release of hazardous materials. On information and belief, as part of the purchase and sale transaction, Unifirst indemnified 50TSI as to environmental contamination on or related to the Property that may have occurred prior to September 27, 1985, for fifteen years and limited to $2,500,000.

15. Danais continued operating at the Property.

16. The deed granting the Property from Superior to 50 Tufts Street, Inc. stated that "Hazardous Wastes as these terms are presently defined under Chapter 21C may have been disposed on said" Property. The corrected deed is recorded in the Middlesex County (South) Registry of Deeds in Book 18310, Page 112.

17. On May 25, 2000, Citizens Bank New Hampshire ("Citizens Bank") loaned $350,000 to Danais.

18. On April 19, 2001, Citizens Bank loaned $575,000 to Danais.

19. On information and belief, on or about November 2, 2001, Citizens Bank caused a Transaction Screen to be conducted by EnviroBusiness concerning the Property. The Transaction Screen stated that recognized environmental conditions existed on the Property, including storage tanks, drums and other containers of TCE and other dry cleaning chemicals, staining and corrosion on the floor, cracks in the floor, a spilled bag

3

)                                          )

of sodium hypochlorite, and extremely poor housekeeping. The Transaction Screen recommended that extensive subsurface investigations be conducted.

20. On information and belief, no subsurface investigations were conducted in 2001.

21. On November 16, 2001, Citizens Bank took a mortgage on the Property to secure the two promissory notes totaling $925,000 in original principal amounts.

22. In early 2002, Danais ceased operations.

23. By document dated June 20, 2002, Superior discharged its mortgage on the Property. The mortgage discharge was recorded on October 25, 2003.

24. On August 7, 2002, Sanborn Head Associates performed a limited environmental testing on the Property, and found that seven of nine soil samples and four of five groundwater samples contained levels of PCE that exceeded reportable concentrations pursuant to the Massachusetts Contingency Plan.

25. Upon information and belief, Superior merged into Unifirst on August 31, 2002.

26. On October 4, 2002, Danais filed for bankruptcy pursuant to Chapter 7 of the United States Bankruptcy Code.

27. On October 3, 2003, 50TSI submitted a Release Notification Form to the Massachusetts Department of Environmental Protection ("DEP") concerning exceedances of applicable standards of chlorinated hydrocarbons in soil and groundwater.

28. On October 29, 2003, DEP sent a Notice of Responsibility to 50TSI concerning releases of hazardous materials at the Property, and assigned Release Tracking Number 3-23246 to the release.

29. Citizens Bank assigned the mortgage secured by the Property to Atlantic National Trust ("Atlantic") on November 21, 2003.

)                                      )

30. On April 13, 2004, DEP requested further information from 50TSI requesting all environmental reports concerning the Property.

31. On August 23, 2004, GeoInsight, an environmental firm retained by Atlantic, reported to DEP pursuant to the Massachusetts Contingency Plan that off-site migration of hazardous materials had occurred from the Property. DEP assigned a Release Tracking Number 3-24376 for this off-site migration.

32. On October 22, 2004, Sanborn Head Associates, on behalf of a tenant at the Property, detected an imminent hazard condition in the building on the Property because of elevated levels of chlorinated volatile organic compounds, and reported this condition to DEP pursuant to the MCP. DEP assigned RTN 3-24358 to this condition.

33. On November 5, 2004, DEP ordered 50TSI to conduct an Immediate Response Action ("IRA") pursuant to the MCP, and assigned RTN 3-24376 due to the detection of chlorinated solvents in groundwater in excess of the applicable standards. 50TSI responded that it could not perform an IRA because it had no assets.

34. On or about December 17, 2004, Unifirst asserted to Atlantic that it had no knowledge of any historical spills or releases while Superior owned or operated the Property.

35. DEP sent a Notice of Response Actions to 50TSI on December 21, 2004, stating that it would perform the required response actions and seek cost recovery.

36. On March 16, 2005, Unifirst asserted to DEP that it had no knowledge of any historical spills or releases while Superior owned or operated the Property.

37. Atlantic National Trust foreclosed on the Property mortgage on May 10, 2005, and transferred title to Somerville Two, LLC ("ST").

)                                          )

38. On May 24, 2005, ST sent a demand letter pursuant to M.G.L. c. 21E, § 4A to Unifirst demanding full contribution and reimbursement for addressing the releases at the Property.

39. DEP ordered ST to conduct response actions to address a SRM condition on June 9, 2005. ST agreed to perform IRA actions.

40. Unifirst provided a response to ST's 4A demand letter on July 7, 2005, stating that it would not perform any response actions on the Property or provide any contribution or reimbursement for costs incurred.

41. DEP issued a Notice of Responsibility to Unifirst on November 9, 2005, for the release of hazardous materials at the Property.

42. On February 23, 2006, Unifirst and ST held a settlement meeting as required by M.G.L. c. 21E. No settlement was reached.

43. The highest levels of chlorinated solvent contamination in groundwater at the Property were detected in a well in the north loading dock area of the Property.

44. Groundwater flow at the Property is to the southeast, towards residential properties along Tufts Street and beyond.

45. Chlorinated solvents have been detected at residential properties to the southeast of the Property, including an elementary school building and a daycare center.

46. ST has expended money in order undertake appropriate and necessary response actions as described above, including investigating the source of the release to determine its origins; identifying potentially responsible parties; retaining environmental experts; retaining legal experts; and providing various notices and information to DEP.

)                )

47. ST has expended an amount of approximately $2,416,535.42 as a result of response actions at the Property.

## COUNT I
### VIOLATION OF CERCLA, 42 USC § 9607(a)

48. ST restates and realleges Paragraphs 1 through 47 above.

49. Unifirst operated a Facility at the Property, as Facility is defined in 42 USC § 9601(9).

50. There was a Release from the Property, as defined in 42 USC § 9601(22).

51. As a result of the Release, ST incurred response costs.

52. As owner or operator of the Facility at the time of the release of hazardous materials, Unifirst is liable as "the owner or operator of a vessel or facility...from which there is a release, or a threatened release which caused the incurrence of response costs, of a hazardous substance...or...any other necessary costs of response by any other person consistent with the national contingency plan." 42 USC § 9607(a).

53. The response costs incurred by ST were necessary and consistent with the National Contingency Plan.

54. Unifirst is a liable party pursuant to 42 USC § 9607(a).

## COUNT II
### VIOLATION OF G.L. C. 21E, § 5 (Damages)

55. ST restates and realleges Paragraphs 1 though 54, above.

56. The Property is a "site" within the meaning of Massachusetts General Laws Chapter 21E, §2.

57. Unifirst is a "person" as this term is defined in Massachusetts General Laws Chapter 21E, § 2.

)                                   )

58. Unifirst is a "person who otherwise caused or [is] legally responsible for a release or threat of release of oil or hazardous materials" from the Property, within the meaning of Massachusetts General Laws Chapter 21E, § 5(a) and 5(a)(1).

59. By a letter dated November 9, 2005, the DEP issued a Notice of Responsibility identifying Unifirst as a "Potentially Responsible Party" with liability under the Massachusetts General Laws Chapter 21E for the release of hazardous materials at the Property.

60. By a letter dated May 24, 2005, ST gave notice to Unifirst of its liability and claims under Chapter 21E in accordance with the provisions set forth in Massachusetts General Laws Chapter 21E, § 4A.

61. ST conferred in good faith with Unifirst in an effort to resolve all disputes between them.  Unifirst refused to pay a reasonable amount to ST for its damages.

62. Pursuant to Massachusetts General Laws Chapter 21E, §5, Unifirst is liable to ST for the damages it has incurred and will continue to incur at the Property.

63. Pursuant to Massachusetts General Laws Chapter 21E, §§4A(d) and 15, Unifirst is liable to ST for its attorneys' and expert witness fees and litigation costs.

COUNT III
VIOLATION OF G.L. c. 21E, § 4 (Response Costs)

64. ST restates and realleges Paragraphs 1 though 63, above.

65. M.G.L. c. 21E, § 4 provides that "any person who undertakes a necessary and appropriate response action due to a release of oil or hazardous material shall be entitled to reimbursement from any other person liable for such release or threat of release."

66. M.G.L. c.21E, § 4 further provides that any person (other than the DEP) who "has undertaken, is undertaking, or intends to undertake a necessary and appropriate response

)                                        )

action or who reasonably believes that he might be liable pursuant to section 5 may notify

any person he reasonably believes is liable under section 5…of the notifier's intent

relating to the taking of any response action" and what the notifier seeks from the person

to whom the notice is sent, including contribution, reimbursement or payment of any

equitable share of the costs of a response action or other liability pursuant to the

provisions of Chapter 21E.

67. ST adhered to the notice procedures set forth in M.G.L. c.21E, § 4A by

forwarding a letter entitled "Notice of Potential Liability Pursuant to M.G.L. c. 21E,

§4A" to Unifirst via certified mail, return-receipt requested (*see* Exhibit A, attached

hereto).

68. As a result of the release of hazardous materials, ST has incurred and will

continue to incur reasonable and necessary assessment, containment, remediation,

removal, and other response costs, within the meaning of Massachusetts General Laws

Chapter 21E, §4, consistent with the Massachusetts Contingency Plan, 319 CMR 40.000.

69. ST has attempted to confer in good faith with Unifirst in an effort to resolve all

disputes between them.  Unifirst has refused to agree to provide reasonable contribution,

reimbursement, or an equitable share of ST's response costs.

70. Pursuant to Massachusetts General Laws Chapter 21E, §§4 and 5(a)(5), Unifirst is

liable to ST for its response costs incurred and to be incurred at the Property.

71. Pursuant to Massachusetts General Laws Chapter 21E, §§4A(d) and 15, Unifirst

is liable to ST for its attorneys' and expert witnesses' fees and litigation costs.

)                                    )

## PRAYERS FOR RELIEF

WHEREFORE, the Plaintiff requests that the Court:

1. Declare that the Defendant is legally responsible for the release of hazardous materials at the Property; for the reasonable costs of the Plaintiff's response actions to assess, contain, and remove the hazardous materials; and for the Plaintiff's damages;

2. To award the Plaintiff compensatory damages in an amount equal to the damage it has incurred and suffered to its real and personal property, including, but not limited to, its loss of the use of the Property and its diminution in value;

3. To award the Plaintiff an amount equal to the costs it has incurred and will continue to incur for the assessment, containment and removal of hazardous materials from the Property;

4. To award the Plaintiff its costs of suit, including attorneys' and expert witnesses' fees;

5. To award the Plaintiff interest; and to fashion such other and further relief as the Court deems just and proper. The Plaintiff hereby demands a trial by jury on all claims so triable.

Respectfully submitted,
SOMERVILLE TWO, LLC,
By its attorneys,

J. Mark Dickison, BBO #629170
Kristina A. Engberg, BBO # 629441
LAWSON & WEITZEN, LLP
88 Black Falcon Avenue, Suite 345
Boston, Massachusetts 02210
Phone (617) 439-4990
Facsimile (617)439-3987

Dated: August 13 , 2008

10

# EXHIBIT A

# LAWSON & WEITZEN, LLP

ATTORNEYS AT LAW

88 BLACK FALCON AVENUE, SUITE 345
BOSTON, MASSACHUSETTS 02210-2414

EVAN T. LAWSON
RICHARD B. WEITZEN *
PAMELA B. BANKERT
FRANK L. BRIDGES
IRA H. ZALEZNIK
JOHN J. WELTMAN ***
VALERIE L. PAWSON
GEORGE F. HAILER +
GEORGE E. CHRISTODOULO, PC
KENNETH B. GOULD
JOSEPH FRIEDMAN
JOHN A. TENNARO
WILLIAM F. COYNE, JR.
DAVID A. RICH*
DENNIS J. HANESIS ++
NATALIE A. KANELLIS †

PATRICIA L. FARNSWORTH
K. SCOTT GRIGGS
MICHAEL J. McDEVITT
STEVEN M. BUCKLEY
SONIA K. GUTERMAN, Ph.D.
J. MARK DICKISON **
CLARE B. BURHOE
ROBERT J. ROUGHSEDGE +++
CAROLINE A. O'CONNELL*
MARISSA A. GOLDBERG
MICHAEL WILLIAMS
KATHRYN E. PIECZARKA
DEAN J. HUTCHISON
SCOTT T. BUCKLEY
CHRISTOPHER S. FARNSWORTH
KRISTINA A. ENGBERG

BOSTON
TELEPHONE (817) 439-4990
TELECOPIER (817) 439-3987
EMAIL: POST@LAWSON-WEITZEN.COM
WWW.LAWSON-WEITZEN.COM

CAPE COD
LAWSON, WEITZEN & BANKERT, LLP
SIX GRANITE STATE COURT
BREWSTER, MASSACHUSETTS 02631
TELEPHONE (508) 255-3600

MARLBOROUGH
LAWSON, WEITZEN & HAILER, LLP
171 LOCKE DRIVE, SUITE 101
MARLBOROUGH, MASSACHUSETTS 01752
TELEPHONE (508) 618-1025

May 24, 2005

**VIA CERTIFIED MAIL, RETURN
RECEIPT REQUESTED**

Ronald D. Croatti, President
Unifirst Corporation
68 Jonspin Road
Wilmington, MA 01887

RE:     50 Tufts Street, Somerville, Massachusetts
Notice of Potential Liability Pursuant to M.G.L. c. 21E, §4A

Dear Mr. Croatti:

This letter serves as notice pursuant to M.G.L. c. 21E, §4A that there is reason to believe that Unifirst Corporation ("Unifirst") is liable under §§ 4, 4A, 5, and 15 of M.G.L. c. 21E ("Chapter 21E") to our client, Somerville Two, LLC, for a release of Oil and/or Hazardous Material ("OHM") at the property located at 50 Tufts Street, Somerville, Massachusetts (the "Property").

On May 10, 2005, Atlantic National Trust, LLC ("Atlantic"), then holder of a note and mortgage on the Property, held a foreclosure auction and took title to the Property in the name of Somerville Two, LLC as a result of its inability to recover the amount due on the note and its costs. This letter is to request that Unifirst make contribution, reimbursement, or pay its equitable share of response costs to address the release at the Property.

This letter consists of a summary of the facts, pertinent scientific information, and general and specific damages which Somerville Two, LLC has sustained and will continue to sustain as a result of the aforementioned release.

* ALSO ADMITTED IN NY
** ALSO ADMITTED IN NH
*** ALSO ADMITTED IN CA
+ ALSO ADMITTED IN DC
++ ALSO ADMITTED IN NJ & PA
+++ ALSO ADMITTED IN RI, CT, NH & ME
† ALSO ADMITTED IN NH & NY

)                                                    )

# LAWSON & WEITZEN, LLP

Ronald D. Croatti, President
May 24, 2005

## I. FACTUAL BASIS OF CHAPTER 21E, § 4A NOTIFICATION

Open Release Tracking Numbers ("RTNs"):

On October 3, 2003, a Release Notification Form was submitted to the Massachusetts
Department of Environmental Protection ("MDEP") on behalf of the then owner, 50 Tufts Street,
Inc., as a result of the detection of chlorinated hydrocarbons in soil and groundwater at the
Property in concentrations exceeding the applicable Massachusetts Contingency Plan ("MCP")
120-day notification requirements. This release was assigned RTN 3-23246.

Subsequently, in October 2004, an environmental consultant retained by the then site tenant
undertook air sampling inside the site building and detected elevated levels of chlorinated
volatile organic compounds ("CVOCs"). The consultant conducted an evaluation indicating that
conditions within the building could pose an imminent hazard to a 40-hours per week
commercial worker when evaluated over a period of five years. MDEP was notified of this
condition on October 22, 2004 and it was assigned RTN 3-24358.

Finally, on November 5, 2004, MDEP assigned RTN 3-24376 to the Property as a result of the
detection of chlorinated solvents in groundwater at concentrations in excess of 5 milligrams per
liter less than fifteen feet below ground surface within thirty feet of an occupied residential
structure.

The MCP deadline for completing a Response Action Outcome Statement ("RAO") or Phase
I/Tier Classification submittal under 3-23246 has passed with no action being taken by any
responsible party. To date, Immediate Response Actions ("IRAs") required under the other
RTNs have been conducted by MDEP.

## Site History

Upon information and belief, Unifirst is the successor by merger to Superior Products &
Equipment Co., Inc. ("Superior"), which operated a dry cleaning/laundry chemical supply
company at the Property from 1979 to 1987. Based on the infrastructure present at the Property,
it appears that Superior's operations included bulk storage and distribution of tetrachloroethene
("PCE"), and possibly other chlorinated solvents, which were delivered to the Property in bulk by
rail and by truck and repackaged for distribution elsewhere.

Long-time residents living in the vicinity of the Property at the time Superior operated there have
reported that chemicals being off-loaded from trains at the north loading dock area were routinely
allowed to drain directly onto the ground. Additionally, MDEP recently received information
from a resident and former employee of Superior that there was constant dripping of chemicals
onto the ground from piping in this area as well.

While the John Denais Company reportedly operated a similar business at the property
from 1987 to 2001, John Denais himself has indicated that this operation did not utilize the north
loading dock for the off-loading of chemicals from trains, but only accepted containerized

# LAWSON & WEITZEN, LLP

Ronald D. Croatti, President
May 24, 2005

chemical shipments from trucks at the south loading dock area.

The highest levels of chlorinated solvent contamination in groundwater at the Property have been detected in a well in the north loading dock area. Groundwater flow at the Property is to the southeast, towards residential properties on the other side of Tufts Street.

Based on the foregoing, a release of oil and/or hazardous materials occurred while Superior owned and operated the Property.

## II. LEGAL BASIS OF CHAPTER 21E, § 4A NOTIFICATION

Based upon the aforementioned facts, Unifirst is liable pursuant to Chapter 21E, § 5(a)(2) as a "person who at the time of storage or disposal of any hazardous material owned or operated any site at or upon which such hazardous material was stored or disposed of and from which there is or has been a release or threat of release of hazardous material" and § 5(a)(5) as "any person who otherwise caused or is legally responsible for a release or threat of release of oil or hazardous material from a vessel or site" to Somerville Two, LLC for "damage to real or personal property incurred or suffered as a result of such release or threat of release." A "person" is defined in § 2 of Chapter 21E to include private corporations. Liability under § 5 is strict, joint, and several.

Section 4 of Chapter 21E provides that any person (other than MDEP) who "has undertaken, is undertaking, or intends to undertake a necessary and appropriate response action ... may notify any person he reasonably believes is liable under section 5 . . . of the notifier's intent relating to the taking of any response action" and of what the notifier seeks from the person to whom the notice is sent, including contribution, reimbursement or payment of any equitable share of the costs of a response action or other liability pursuant to the provisions of Chapter 21E. Somerville Two, LLC has taken and intends to undertake additional necessary and appropriate response actions to make the Property marketable for sale at a price which will allow Somerville Two, LLC to recover its costs and amounts to which Atlantic National Trust, LLC is entitled under the note from 50 Tufts Street, Inc.

Section 4A allows the courts to award claimants such as Somerville Two, LLC their litigation costs and attorney's fees if it is found that the person against whom a civil action is brought is liable and:

> (1) failed without reasonable basis to make a timely response to a notification pursuant to this section, or (2) did not participate in negotiations or dispute resolution in good faith, or (3) failed without reasonable basis to enter into or carry out an agreement to perform or participate in the performance of the response action on an equitable basis or pay its equitable share of the costs of such response action or of other liability pursuant to the provisions of this chapter, where its liability was reasonably clear . . . .

Should this case advance to trial, Unifirst may also be liable to Somerville Two, LLC for its attorney's fees and expert witness fees pursuant to M.G.L. c.21E, § 15, which states:

# LAWSON & WEITZEN, LLP

Ronald D. Croatti, President
May 24, 2005

> [I]n any suit by Massachusetts residents to enforce the requirements of
> this chapter, or to abate a hazard related to oil or hazardous materials in
> the environment, the court may award costs, including reasonable
> attorney and expert witness fees, to any party other than the
> commonwealth who advances
> the purposes of this chapter....

Finally, Unifirst may also be liable to Somerville Two, LLC under common law theories of liability including, without limitation, negligence, nuisance, and/or trespass.

Somerville Two, LLC seeks reimbursement from Unifirst for 100% of its past and future response costs and any and all real and personal property damage suffered as a result of the release of hazardous materials at the Property. Somerville Two, LLC is not a "person liable" and has not caused or contributed in any respect to the release and is entitled to full recovery. Additionally, Somerville Two, LLC is entitled to recover its damages from the diminution in value of the Property as a result of the release.

Pursuant to § 4A of Chapter 21E, **Unifirst is required to respond to this notice within forty-five (45) days of receipt.** Should Unifirst fail without reasonable basis to make a timely response to this notice and be found liable, Somerville Two, LLC will pursue reimbursement for litigation costs and reasonable attorney's fees pursuant to § 4A(d) and § 15 as set forth above.

Somerville Two, LLC prefers to discuss and resolve this matter informally and expeditiously, avoiding any unnecessary delay and expenditure. To that end, we are requesting that Unifirst forward to this office any and all documents or information in its possession relating to Superior's operations at the Property, including but not limited to building permits, permits for the storage or use of laundry or dry cleaning chemicals, records relating to the shipment and receipt of dry cleaning and laundry chemicals at the Property, supplier and customer records, and employee records. Copies of all documents in Somerville Two, LLC's possession relating to the release at the Property and the basis of its belief that Unifirst is liable are being provided to Unifirst herewith.

We request that a copy of this demand be transmitted to any insurers who may hold policies under which any of the above claims are covered. M.G.L. c. 176D § 3(9) bars unfair insurance claims settlement practices, and failure to make a reasonable offer of settlement may result in the award of multiple damages and fees.

# LAWSON & WEITZEN, LLP

Ronald D. Croatti, President
May 24, 2005

Please direct all correspondence and communications relating to this matter to Valerie L. Pawson, Esq. at the above letterhead. Thank you for your attention to this matter and we look forward to hearing from you.

Very truly yours,

Clare B. Burhoe, Esq.

Enclosures
cc (cover only):      Client
                      Irene Dale, MDEP
                      Gregory A. Bibler, Esq.
                      Valerie L. Pawson, Esq.

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>x G Kushrough  ☒ Agent  ☐ Addressee<br>B. Received by (Printed Name)  C. Date of Delivery<br>Kuszkowski  5/25/05 |
| 1. Article Addressed to:<br><br>Ronald D. Croeffi, President<br>Unifirst Corp<br>68 Jonspin Rd.<br>Wilmington Me. 01887 | D. Is delivery address different from item 1?  ☐ Yes<br>If YES, enter delivery address below:  ☐ No<br><br>3. Service Type<br>☒ Certified Mail  ☐ Express Mail<br>☐ Registered  ☒ Return Receipt for Merchandise<br>☐ Insured Mail  ☐ C.O.D.<br>4. Restricted Delivery? (Extra Fee)  ☐ Yes |
| 2. Article Number<br>(Transfer from service label)  7002 2030 0007 8299 2441 | |

PS Form 3811, August 2001  Domestic Return Receipt  102595-02-M-1540



US Postal Service
CERTIFIED MAIL RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)
For delivery information visit our website at www.usps.com

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee<br>(Endorsement Required) | Postmark<br>Here |
| Restricted Delivery Fee<br>(Endorsement Required) | |
| Total Postage & Fees | $ |

Sent To  Ronald Croeffi / Unifirst Corp
Street, Apt. No.;
or PO Box No.  68 Jonspin Rd
City, State, ZIP+4  Wilmington MA. 01887

PS Form 3800, June 2002  See Reverse for Instructions

# LAWSON & WEITZEN, LLP

ATTORNEYS AT LAW

88 BLACK FALCON AVENUE, SUITE 345
BOSTON, MASSACHUSETTS 02210-2414

EVAN T. LAWSON
RICHARD B. WEITZEN *
PAMELA B. BANKERT, PC
IRA H. ZALEZNIK
JOHN J. WELTMAN ***
VALERIE L. PAWSON, LLC
GEORGE F. HAILER, PC *
GEORGE E. CHRISTODOULO, PC
KENNETH B. GOULD
JOSEPH FRIEDMAN
JOHN A. TENNARO, PC
DAVID A. RICH, LLC *
PATRICIA L. FARNSWORTH
K. SCOTT GRIGGS
MICHAEL J. McDEVITT

STEVEN M. BUCKLEY
SONIA K. GUTERMAN, Ph.D.
J. MARK DICKISON **
ROBERT J. ROUGHSEDGE **
RICHARD J. SULLIVAN, JR.
CAROLINE A. O'CONNELL *
ANASTASIA S. PSALTOPOULO
MICHAEL WILLIAMS
KATHRYN E. PIECZARKA
DEAN J. HUTCHISON
SCOTT T. BUCKLEY
KRISTINA A. ENGBERG
C. KIMBERLY BAKEBERG
JAMES M. HENRY
MICHELE A. HUNTON

BOSTON
TELEPHONE (617) 439-4990
TELECOPIER (617) 439-3987
E-MAIL: POST@LAWSON-WEITZEN.COM
WWW.LAWSON-WEITZEN.COM

CAPE COD
LAWSON, WEITZEN & BANKERT, LLP
SIX GRANITE STATE COURT
BREWSTER, MASSACHUSETTS 02631
TELEPHONE (508) 255-3600

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX
AUG 1 4 2008
CLERK

August 14, 2008

08-3075

**VIA HAND DELIVERY**
Civil Clerk's Office
Middlesex Superior Court
200 Trade Center
Woburn, MA 01801

Re:   *Somerville Two, LLC v. Unifirst Corporation*

Dear Sir/Madam:

Enclosed please find the following documents for docketing regarding the above referenced matter:

1. Complaint;
2. Civil Action Cover Sheet; and
3. Check in the amount of $275.00 for filing fee.

Thank you for your assistance in this matter. Please do not hesitate to contact our office should you have any questions.

Very truly yours,

J. Mark Dickison

Enclosures

* ALSO ADMITTED IN NY
** ALSO ADMITTED IN NH
*** ALSO ADMITTED IN CA
+ ALSO ADMITTED IN DC
++ ALSO ADMITTED IN RI, CT, NH & ME

## **Resolute** Management Inc.

**Alexandra S. Zajac**
Senior Claims Specialist
267.765.3784 – tel
267.765.9938 – fax
alex.zajac@resolute-midatlantic.com

**Mid-Atlantic Division**
United Plaza
30 South 17th Street
Suite 700
Philadelphia, PA 19103

March 30, 2009

Robert J. Gilbert
Gilbert & Renton
344 North Main Street
Andover, Massachusetts 01810-2611

Re:   Insured:     UniFirst Corporation
      Suit:        *Somerville Two, LLC v. UniFirst Corp.*
                   (Commonwealth of Massachusetts)
      DEP Claim:   NOR dated 11/9/05; NOR dated 1/27/09
                   50 Tufts Street
                   Somerville, Massachusetts
      File:        717 L 063616-3

Dear Mr. Gilbert:

As you know, Resolute Management Inc. is administering the above-captioned claims on behalf certain ACE-related companies ("the companies") and I am handling all developments regarding these matters. The purpose of this letter is to advise you that we have received and reviewed the materials you provided in connection with these claims, including copies of the auto policies under which UniFirst Corp. ("UniFirst") is requesting insurance coverage.

Based upon our review of the following policies, in conjunction with the allegations of the *Somerville Two* litigation and the NORs, we have determined that the companies are under no obligation to defend and/or indemnify UniFirst in these matters[1].

| Policy | Terms |
|--------|-------|
| ISA 806835 | 10/1/89 – 10/1/90 |
| ISA 806905 | 10/1/90 – 10/1/91 |
| ISA 806974 | 10/1/91 – 10/1/92 |
| ISA 807036 | 10/1/92 – 10/1/93 |
| ISA 807091 | 10/1/93 – 10/1/94 |
| ISA 807145 | 10/1/94 – 10/1/95 |
| ISA H0 635261-3 | 10/1/95 – 10/1/96 |
| ISA H0 712573-2 | 10/1/96 – 10/1/97 |

---

[1] Please be advised that we are continuing with our search for internal copies of the policies under which UniFirst seeks coverage.

Robert J. Gilbert
Re: UniFirst Corp.
March 30, 2009
Page 2

| Policy | Terms |
|--------|-------|
| ISA H0 732012-7 | 10/1/97 – 10/1/98 |
| ISA H0 732098-A | 10/1/98 – 10/1/99 |
| ISA H0 740995-3 | 10/1/99 – 10/1/00 |
| ISA H0 767496-A | 10/1/00 – 10/1/01 |
| ISA H0 784443-8 | 10/1/01 – 10/1/02 |
| ISA H0 793496-8 | 10/1/02 – 10/1/03 |
| ISA H0 795962-A | 10/1/03 – 10/1/04 |
| ISA H0 795987-4 | 10/1/04 – 10/1/05 |

The plaintiff in the *Somerville Two* lawsuit alleges UniFirst is liable for contamination at property located at 50 Tufts Street, in Somerville, Massachusetts ("the Site"). The plaintiff alleges UniFirst's former subsidiary operated a dry cleaning and laundry chemical distribution facility at the Site from 1976 through September 1985. As a result of these operations, PCE and other chlorinated solvents were historically spilled and/or released into the environment thereby causing contamination[2].

In addition to the *Somerville Two* litigation, UniFirst also received two Notice of Responsibility ("NOR") letters from the Massachusetts Department of Environmental Protection ("MADEP") involving the Site. The first NOR was dated November 9, 2005 and the second dated January 27, 2009.

The policies under which UniFirst seeks coverage for these matters are Business Auto Liability policies which do not provide general liability coverage. These policies provide, in pertinent part, as follows:

Section II – Liability

A. Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies , caused by an "accident" and resulting form the ownership, maintenance or use of a covered "auto".

Section IV – Business Auto Conditions

7. Policy Period. Coverage Territory

Under this Coverage Form, we cover "accidents" and "losses" occurring:

a. During the policy period shown in the Declarations Page

The allegations in the *Somerville Two* complaint maintain UniFirst is liable for damages at the Site as a result of its subsidiary's dry cleaning and laundry chemical supply company operations from 1976 through 1985. The plaintiff maintains that chemicals were routinely allowed to drain directly onto the

---

[2] The alleged spills and/or releases occurred when supplies were offloaded and dripped from piping onto the ground.

Robert J. Gilbert
Re: UniFirst Corp.
March 30, 2009
Page 3

ground at the Site. The plaintiff also maintains that chemicals were routinely allowed to drip from piping onto the ground and that there was a large leak of chemicals while offloading at the Property in 1980[3].

Per the insuring agreement cited above, the policies under which UniFirst tendered its claims provide coverage for "property damage...caused by an accident and resulting from the ownership, maintenance or use of a covered "auto." The *Somerville Two* complaint does not contain any allegations that the damages the plaintiff is seeking are the result of an "accident" arising out of the "ownership, maintenance or use of a covered "auto". In that the allegations in the complaint fall outside of the scope of the insuring agreement there would be no coverage for the *Somerville Two* litigation under the auto policies.

Similar to the litigation discussed above, there is no evidence to suggest that the MADEP, by way of the NOR, is requiring UniFirst to investigate and address environmental conditions at the Site as a result of "property damage... caused by an accident resulting from the ownership, maintenance or use of a covered "auto."[4] UniFirst itself maintains that the conditions at the Site are the result of accidents that pre-date the companies' policy periods. In that coverage under the auto policies are limited to, among other things, "accidents" that occur during the policy period, there would be no coverage for the MADEP claim as well.

In addition to the above, coverage is limited and/or precluded based on certain terms, conditions and/or exclusions contained in the policies.

First, policies under which UniFirst seeks coverage contain deductible endorsements which state that the companies' obligation to pay "damages" only applies to sums the insured becomes "legally obligated to pay" in excess of various deductible limits. UniFirst is responsible for the payment of all defense expenses within the relevant deductibles. At this time, you have not provided us with any information to suggest UniFirst has met the deductible requirements under its policies.

Second, these policies contain pollution exclusions that preclude coverage for "bodily injury" or "property damage" arising out of the "actual, alleged, or threatened discharge, dispersal, release or escape of pollutants" that are "being transported...into, onto or from the covered "auto"...in the course of transit by the "insured" or; "being stored, disposed treated or processed in or upon the covered "auto." The exclusions also preclude coverage for releases that occur "before the pollutants...are moved from the place where they are accepted...into or onto the covered auto" as well as releases "after the pollutants...are moved from the covered auto..." Finally, the exclusions preclude coverage for any "loss, cost or expense arising out of any governmental action..." requiring the insured to address contamination. Therefore, there would be no coverage based on the pollution exclusion.

Notwithstanding the above, given the nature of this claim, the following issues may further act to limit and/or preclude coverage under the policies:

---

[3] We understand that UniFirst has reached a settlement with *Somerville Two* whereby UniFirst agreed to purchase the Property for $1,190,000 and resolve all disputes concerning any claims for any alleged damages relating to the Site and/or the litigation for $500,000.

[4] Information provided by UniFirst indicates historical releases of PCE from piping and hoses used to transfer PCE into an above-ground storage tank located at the Site.

Robert J. Gilbert
Re: UniFirst Corp.
March 30, 2009
Page 4

1. There is or may be no coverage to the extent that some, or all, of the costs and liabilities incurred with regard to the claims captioned above do not arise out of "property damage." Specifically, the payment of $1,190,000 by UniFirst to *Somerville Two* to purchase the property at 50 Tufts Street does not falls within the definition of "property damage."

2. There is or may be no coverage to the extent that any sums that the insured may be legally obligated to pay are in the nature of fines or penalties imposed by law, or punitive or exemplary damages.

3. There is or may be no coverage to the extent that the policies provide coverage only for injury or damage that was not anticipated, expected and/or intended from the standpoint of the insured. We reserve the right to deny coverage to the extent that any "property damage" was anticipated, expected and/or intended from the standpoint of the insured.

4. There could be no coverage for costs or liability incurred as a result of damage occurring due to the activities of an entity not then insured under the applicable policies.

5. There is or may be no coverage to the extent that the insured did not comply with any and all conditions precedent and/or subsequent to coverage under the policies, including but not limited to the condition that the insured provide adequate and timely written notice of accidents, claims and/or suits and copies of all demands, notices and other pleadings received.

6. There is or may be no coverage to the extent that the damages were, or may have been, known to the insured and/or were already in progress prior to the issuance of the policies, or were due to nonfortuitous events.

7. There is or may be no coverage to the extent that any other coverage that may have to respond before the referenced policies may respond has not or may not have been properly exhausted. These policies contain an "Other Insurance" clause found in "Section IV – Business Auto Conditions" of the policies' insuring agreement and states that "for any covered "auto" you don't own the insurance provided by this Coverage Form is excess over any other collectible insurance."

8. There is or may be no coverage to the extent that the insured, by its actions and/or inaction, has or may have failed to mitigate, minimize, avoid or prevent "property damage" or injuries and/or failed to cooperate with its insurance carriers in connection with the underlying claims and/or jeopardized subrogation rights.

9. There is or may be no coverage to the extent that the insured voluntarily made any payments, assumed obligations or incurred expenses in connection with these claims.

10. Any available coverage under the policy would be limited by "per accident" and/or "aggregate" limits of liability. There is or may be no coverage to the extent that such policy limits have been reduced, impaired or exhausted by prior claims.

11. There is or may be no coverage because of other defenses which go beyond the language of the policies, which may be developed or discovered during the course of further investigation.

Robert J. Gilbert
Re: UniFirst Corp.
March 30, 2009
Page 5

12. Coverage is limited by, and may be barred in whole or in part, by the terms, conditions, limitations, exclusions incorporated into the policies, including but not limited to: 1) the "Care, Custody or Control" exclusion; 2) the "Handling of Property" exclusion; and 3) the "Movement of Property by Mechanical Device" exclusion. Further, coverage is limited by, and may be barred in whole or in part, by other provisions incorporated into the policies, or by considerations of public policy.

13. There is or may be no coverage for claims, or portions of claims, which allege fraud or deceit. As noted above, your policies do not cover damages that are "expected or intended by the insured." Moreover, fraud and deceit do not constitute damages because of "property damage" and do not constitute an "accident" as these terms are defined in your policy. We specifically reserve the right to disclaim coverage for such claims.

14. There is or may be no coverage for any entity that is not a named insured or additional named insured as those terms are defined by the policy.

15. We reserve the right to recoup any amount spent for claims or parts of claims later shown not to be covered by the policies.

16. The policies do not or may not apply to defense, investigation, settlement or legal expenses covered by underlying insurance and/or the retained limits or deductible amounts, and the policies do not apply to the defense of claims or suits except as provided for therein.

17. There is or may be no coverage to the extent that the insured failed to disclose material facts when it applied for insurance coverage or misrepresented facts in its application for insurance.

18. There is or may be no coverage to the extent that the costs or liabilities were assumed under certain contracts or agreements which may be excluded from coverage. Specifically, there would be no coverage for the liabilities assumed by UniFirst pursuant to the indemnification clause in the proposed *Somerville Two* settlement agreement.

If you have any new or additional information that may have a bearing on our coverage determination, please provide it to us as soon as possible.

Specification of the above shall not and may not be deemed a waiver of any other provision, term or condition of the policies. The positions expressed herein are not meant to be exhaustive or exclusive. The companies expressly reserve all rights under the policies that are available pursuant to pertinent law, and based on the facts surrounding this matter. The companies also reserve the right to supplement this letter and assert any applicable provision, term or condition of the policies after additional facts are provided.

Should you have any questions regarding the foregoing, please contact me.

Very truly yours,

Alexandra S. Zajac
Senior Claims Specialist
Resolute Management, Inc.

5

# Commonwealth of Massachusetts
## County of Suffolk
## The Superior Court

CIVIL DOCKET#: **SUCV2015-00879-BLS2**

RE:    Unifirst Corp v Ins Co of No America et al

TO:    Robert J Gilbert, Esquire
        Gilbert & Renton
        344 North Main Street
        Andover, MA 01810-2611

---

## NOTICE OF DOCKET ENTRY

You are hereby notified that on **03/27/2015** the following entry was made on the above referenced docket:

**Complaint (Business) & jury demand**
Dated at Boston, Massachusetts this 31st day of March, 2015.

Michael Joseph Donovan,
Clerk of the Courts

BY: Richard Muscato
Assistant Clerk

Telephone: 617-788-8152

Disabled individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130 cvdgeneric_2.wpd 4858391 inidoc01 ceasrodn

**Commonwealth of Massachusetts**
County of Suffolk
**The Superior Court**

↘3/3)

CIVIL DOCKET#: **SUCV2015-00879-BLS2**

RE: Unifirst Corp vs. Ins Co of No America et al

Notice Sent 3-31-15
- C:R
- RSC
Ⓡ

## NOTICE OF ACCEPTANCE INTO BUSINESS LITIGATION SESSION

This matter has been accepted into the Suffolk Business Litigation Session. It has been assigned to **BLS2**.

Hereafter, as shown above, all parties must include the initials "BLS2" at the end of the docket number on all filings.

Counsel for the plaintiff(s) is hereby advised that within seven (7) days of the filing of an appearance, answer, motion or other response to the complaint by or on behalf of the defendant(s) which has been served with process with in the time limitation of Mass. R. Civ. P. Rule 4(j), or such other time as may be modified by the Court, he or she shall send notice thereof to the **BLS2** Session Clerk, Suffolk Superior Court, Three Pemberton Square, Boston, MA 02108.

Upon receipt of such notice, the Court will issue a Notice of Initial Rule 16 Conference for purposes of meeting with all counsel. Before the Rule 16 conference counsel shall discuss with their clients and with opposing counsel whether the parties will participate in the BLS Pilot Project on Discovery (counsel are directed to http://www.mass.gov/courts/courtsandjudges/courts/superiorcourt/index.html for description of the Project). Counsel may indicate their respective client's participation by completing, filing and serving the attached form. If by the date of the initial Rule 16 Conference, not all parties have given notice of their participation, counsel shall be prepared to discuss at that conference whether their clients will participate in the Pilot Project.

The Court requests that plaintiff's counsel serve on opposing parties a copy of this notice and the attached form.

Dated: 03/30/2015

Janet L. Sanders
Justice of the Superior Cou'



**2. Article Number**

9214 7969 0099 9790 1601 0521 08

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent
☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

**1. Article Addressed to:**

c/o John J. Lupica, President
Indemnity Insurance Co. of North America
436 Walnut Street
Philadelphia, PA 19106

D. Is delivery address different from Item 1?  ☐ Yes
If YES enter delivery address below:  ☐ No

3. Service Type   ☒ Certified

4. Restricted Delivery? (Extra Fee)   ☐ Yes

PS Form 3811     Domestic Return Receipt

Reorder Form LCD-811 rev. 01/13
1-800-538-4900
www.printsartifiedmail.com



UNITED STATES POSTAGE
02 1P
0001690158
MAILED FROM ZIP



9214 7969 0099 9790 1601 8521 08

Indemnity Insurance Co. Of No. America
c/o John J. Lupica, President
436 Walnut Street
Philadelphia, PA 19106

RECEIVED

APR ~ ~ 2015

ACE INCOMING LEGAL

LBERT & RENTON LLC
344 North Main Street
Andover, Massachusetts 01810-2611